IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| BRENDA DAVIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 17-06058-CV-SJ-SWH |
| | ) |
| BUCHANAN COUNTY, MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

## **ORDER**

I.     PROCEDURAL BACKGROUND

Plaintiffs Brenda Davis and Frederick Stufflebean filed suit against Buchanan County, Missouri, three former or current County Commissioners (Harry Roberts, Dan Hausman, and Ron Hook), the former Sheriff of Buchanan County (Mike Strong), the former Buchanan County Jail Administrator (Jody Hovey), members of the Buchanan County Sheriff's Department (Brian Gross, Natalie A. Bransfield, and Dustin Nauman), Advanced Correctional Healthcare Inc. (hereafter "ACH"), a doctor and nurse employed by ACH (Dr. Catherine M. Van Voorn and Ann Marie Slagle, LPN), the Warden of the Western Reception and Diagnostic Correctional Center (Ryan Crews), Corizon Health, Inc. (hereafter "Corizon"), and a nurse employed by Corizon (Donna Euler), seeking damages arising from the death of their son, Justin Stufflebean, who was incarcerated at the Buchanan County Jail (hereafter "the Jail") and later at the Western Reception Diagnostic and Correctional Center (hereafter "the Correctional Center"). (Doc. #1-2) Plaintiffs assert the following claims: Count I - a wrongful death action against Buchanan County, the County Commissioners, the former Sheriff, the former Jail Administrator, the employees of the Sheriff's Department, and the Warden; Count II - a wrongful death action against ACH and the

doctor and nurse employed by ACH; Count III - a wrongful death action against Corizon and the nurse employed by Corizon; and Count IV - a §1983 claim against all defendants alleging deliberate indifference to serious medical needs. (Doc. #1-2, at 19-26)  Defendants removed the action to federal court on May 8, 2017. (Doc. #1)

Five motions to dismiss have been fully briefed by the parties and are ripe for resolution:

1.  Motion to Dismiss by Defendants Corizon Health, LLC[1] and Donna D. Euler, R.N. and Motion for Extension of Time to File Answer, doc. #7;

2. Defendants Advanced Correctional Healthcare, Inc., Catherine M. Van Voorn, M.D. and Ann Marie Slagle, LPN's Motion to Dismiss Count IV of Plaintiffs' Petition, doc. #12;

3.  Defendants Corizon Health, Inc. and Donna Euler, R.N.'s Motion to Dismiss Count III of Plaintiffs' Petition for Damages for Plaintiffs' Failure to File Health Care Affidavits, doc. #46;

4.  Defendants Advanced Correctional Healthcare, Inc., Catherine M. Van Voorn, M.D. and Ann Marie Slagle, LPN's Motion to Dismiss State Tort Claims Based on Failure to File An Affidavit Pursuant to RSMO. Section 538.225, doc. #47;

5.  Buchanan County Defendants' Motion to Dismiss Count I of Plaintiffs' Petition for Damages for Failure to File Health Care Affidavits, doc. #52.

The motions seeking to dismiss Counts I, II, and III for failure to file a medical affidavit are not opposed by plaintiffs[2].  Plaintiffs, however, maintain that the dismissal should be without prejudice (doc. #49, at 1-2 and #50 at 1-2), and defendants do not contend otherwise.  Thus, these

---

[1] Corizon Health, LLC, notes that is has been named in the litigation as Corizon Health, Inc. (Doc. #7 at 1)

[2] In response to the motions filed seeking to dismiss Counts II and III of the Petition, plaintiffs specifically acknowledged they had not filed the affidavits and that dismissal without prejudice was appropriate. (Doc. #49, at 1-2; Doc. #50, at 1-2)  The Plaintiffs did not respond to the identical motion filed by the Buchanan County defendants seeking to dismiss Count I for failure to file the health care affidavits.

motions will be granted leaving for resolution, in this order, the two motions filed claiming that the petition fails to properly plead a constitutional violation in Count IV as to defendants ACH, Van Voorn, Slagle, Corizon, and Euler. (Doc. ##7 and 12)

## II. APPLICABLE LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(1). The rule requires more than an "unadorned" complaint, but requires less than "detailed factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Thus, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Courts ruling on a motion to dismiss a complaint for failure to state a claim, must "construe the complaint in the light most favorable to the nonmoving party." Carton v. General Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir. 2010). The non-moving party is entitled to all reasonable inferences. Cent. Platte Nat. Res. Dist. v. U.S. Dep't of Agric., 643 F.3d 1142, 1148 (8th Cir. 2011). Nevertheless, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S.Ct. at 1950. Courts must read the complaint "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).

## III. FACTS[3]

On December 15, 2014, the plaintiffs' son, Justin Stufflebean (hereafter "decedent"), was charged with a crime and taken into custody and incarcerated at the Jail on December 23, 2014.

---

[3] The facts are taken from plaintiffs' Petition for Damages (Doc. #1-2).

3

Defendant ACH is a private for-profit company contracted to provide medical care to inmates at the Jail.

Decedent suffered from a number of medical ailments including: Addison's disease, hypocalcemia, myelopathy, neuropathy, anxiety, depression, abdominal pain, vitamin B12 deficiency, Gastro-esophageal reflux disease with esophagitis, indigestion, asthma and cholelithiasis.

On the day he was incarcerated, an employee of defendant ACH performed a medical assessment on the decedent and submitted the assessment to defendant Dr. Van Voorn for her review and signature. ACH, including Dr. Van Voorn, had access to a medical intake screen performed by the Buchanan County Sheriff Department (hereafter "BCSD), which was completed prior to the ACH assessment. Decedent informed jail personnel that he was on a lot of medications and had a calcium deficiency. The BCSD's screen was marked as Medical in the Special Condition section of the form. Decedent later posted bond.

On October 26, 2015, decedent received his sentence. At the sentencing hearing, decedent's long-time treating physician detailed decedent's disease process, his treatment regimen and the fragility of decedent's condition. The physician explained that Addison's disease is the failure of the adrenal glands to make cortisol which is necessary to sustain life. The disease also affects calcium levels in the body. The physician stated that the decedent had very low levels of calcium, which can be damaging to the body and life-threatening. The physician cautioned that decedent's calcium levels must be controlled, and that failure to have access to a hospital, or delayed access, can be deadly. Defendant Gross, a Deputy Officer with the BCSD, was in the courtroom during the physician's statements. After the decedent was sentenced, defendant Gross

took the decedent into custody. Defendant Gross did not inform jail personnel of the physician's testimony or decedent's medical condition.

Upon incarceration at the Jail, defendant Nauman completed the BCSD Medical Intake Screening of decedent. Defendant Nauman inaccurately noted that decedent was not under a physician's care. The intake screen noted that decedent was on a number of medications, including: "pregnizon[4], Fultracordadone, Nathara, Calsatrio, Magnesium and PotassiumE." (Doc. #1-2, at ¶37) Decedent also complained of abdominal pain at the time. Defendant Nauman referred decedent to Medical, but did not mark "Medical" under Special Condition.

The same day decedent was sentenced and incarcerated at the Jail, decedent's mother (one of the plaintiffs), delivered decedent's medications to the Jail. Those medications included Natpara, melatonin, hydrocodone, ondansetron, fludrocortisone, paroxetine, calcitriol, prednisone and Vitamin D. Decedent's mother also provided specialized injection tips for the Natpara. A week prior to his incarceration decedent was seen for acute abdominal pain and was prescribed ondansetron for nausea and vomiting. The calcitriol was used to maintain decedent's calcium levels within normal range.

On October 27, 2015, the day after he was incarcerated, decedent asked that his medications be brought to him and told employees that he had Addison's and hypoparathryoid disease. Defendant Slagle, a nurse employed by ACH, requested a verbal order from defendant Dr. Van Voorn for the following medications: "Natpara 50 mcg daily sc with notation that 'patient must supply' medication; Vit D Ergo 500001 cap po daily, Ondansetron Zofran 4 mg dissolve one tab by mouth every 6 hours; Paxil 10 mg 1 tab po daily; Prednisone 10 mg 1 tab po daily;

---

[4] The spelling and capitalization of the medications above are written as they appear in the petition. (Doc. #1-2, at ¶37)

Fludrocortisone 0.1 mg 2 tab po daily." (Doc. #102, at ¶46)  Defendant Dr. Van Voorn denied the ondansetron and ordered that the patient must supply his own Natpara.  She also failed to order calcitrol to maintain decedent's calcium levels.  Decedent did not receive his medications on October 27, 28, or 29, 2015.

On October 29, 2015, decedent was transferred to the Correctional Center and was found fit for confinement.  Decedent did not receive his prescribed medications on October 30 or 31, 2015.  On October 31, 2015, decedent was taken by ambulance to Mosaic Life Care Medical Center (hereafter "Mosaic").  Upon arrival at Mosaic, decedent was unresponsive and in cardiac and respiratory arrest with cardiopulmonary resuscitation in process.  Defendant nurse Euler informed Mosaic that the morning of October 31, 2015, decedent "was dizzy but he wanted to stay in his cell . . . . Then they brought him to him [sic] and he was kind of dizzy and he was talking and suddenly he became unresponsive." (Doc. #1-2, at ¶64)

On November 4, 2015, decedent's mother (the plaintiff) retrieved decedent's prescriptions from the Jail and discovered he had not been given his prescribed medications.  On November 16, 2015, decedent was pronounced dead.

## IV.     DISCUSSION

A.     Section 1983 Claims Against the Individual Defendants

Defendants Euler, Slager, and Van Voorn seek dismissal of the §1983 claim and assert that the factual allegations are not sufficient to show a plausible claim for an Eighth Amendment violation.

The Eighth Amendment prohibits "cruel and unusual punishments" for those convicted of a crime. U.S. Const. amend. VIII.  The Eighth Amendment's prohibition on cruel and unusual punishment may be violated where there is insufficient or no medical care rendered to an inmate.

Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). An inmate "advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs." Wilson v. Seiter, 501 U.S. 294, 297, 111 S. Ct. 2321, 2323, 115 L. Ed. 2d 271 (1991). In determining whether an official was deliberately indifferent, courts look to whether the inmate "suffered from an objectively serious medical need" and that the official knew of the medical need but nevertheless disregarded the medical need. Scott v. Benson, 742 F.3d 335, 340 (8th Cir. 2014). The Eighth Circuit recognizes that "[g]rossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment. Medical care so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care violates the eighth amendment." Smith v. Jenkins, 919 F.2d 90, 93 (8th Cir. 1990) (citations omitted).

This Court must therefore determine whether the Petition for Damages sufficiently alleges that decedent had an objectively serious medical need. An objectively serious medical need is "'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir.1991)). Decedent's physician testified at decedent's sentencing hearing about the fragility of decedent's circumstance. (Doc. #1-2, at ¶¶28-31) Specifically, his physician testified that decedent suffered from Addison's Disease and that decedent's adrenal glands fail to make cortisol, a hormone necessary to sustain life. (Doc. #1-2, at ¶29) Therefore, decedent has sufficiently alleged an objectively serious medical need.

The Court next turns to the subjective prong. Under this prong, a claimant must allege that "the official acted or failed to act despite his knowledge of a substantial risk of serious harm."

7

Farmer v. Brennan, 511 U.S. 825, 842, 114 S. Ct. 1970, 1981, 128 L. Ed. 2d 811 (1994). Deliberate indifference is neither negligence, nor purposeful or knowing conduct; instead, it is somewhere between the two. Id. at 836. Therefore, liability attaches only where a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Plaintiffs allege that when decedent was first incarcerated, approximately ten months prior to his second confinement, he informed jail personnel that he was on a number of medications and had a calcium deficiency. (Doc. #1-2, at ¶¶21, 24) At that time, the BCSD Medical Intake Screening form was marked with a "Medical" as a "Special Condition" and defendant Van Voorn reviewed the medical assessment. (Doc. #1-2, at ¶¶25-26) One may infer at this point in the litigation that medical personnel at the Jail would have had access to records that were less than a year old.

When decedent was incarcerated a second time he again went through a medical screen, wherein the Jail was informed that decedent was on a number of medications and was suffering from abdominal pain. (Doc. #1-2, at ¶¶35-39) Decedent was referred to Medical at that point. (Doc. #1-2, at ¶39) Decedent's mother immediately brought decedent's medications and specialized injection tips to the Jail. (Doc. #1-2, at ¶41) The day after he was incarcerated, decedent informed the jail personnel and defendant Slagle that he had Addison's Disease and requested his medications. (Doc. #1-2, at ¶44, 45) Defendant Slagle requested a verbal order from defendant Van Voorn for a number of medications evidencing a serious medical need. (Doc. #1-2, at ¶46) Defendant Van Voorn denied one of the medications and failed to order calcitrol. (Doc. #1-2, at ¶¶47, 54-55) Plaintiffs allege that decedent did not receive his medication the entire time

he was incarcerated at the Jail. (Doc. #1-2, at ¶¶27, 56-58)  One may infer that defendants Slagle and Van Voorn were aware of decedent's diagnoses and, as medical professionals, were aware of the seriousness of his condition and that any failure to properly manage his condition could be fatal.

On October 29, 2015, decedent was transferred to the Correctional Center. (Doc. #1-2, at ¶59)  An inference can be drawn that at the time decedent was transferred his medical records also would have been provided to the Correctional Center.  Plaintiffs allege that Euler provided care to decedent and provided decedent's medical history to Mosaic Life Care. (Doc. #1-2, at ¶¶64)  An inference can be drawn that defendant Euler was aware of decedent's health records.  Plaintiffs allege that decedent was not provided his medications at the Correctional Center. (Doc. #1-2, at ¶¶61, 63)

While the above inferences may turn out to be erroneous, on a motion to dismiss such inferences may be made. Cent. Platte Nat. Res. Dist, 643 F.3d at 1148.  Therefore, the individual defendants' failure to inquire further into decedent's medical condition and/or failure to provide the necessary care may be sufficient for an Eighth Amendment violation. See Sanchez v. Taggart, 144 F.3d 1154, 1156 (8th Cir. 1998) (finding that the failure of a nurse, who had been told of an inmate's medical restrictions, to make further inquiries into the inmate's medical condition was sufficient to survive summary judgement).  Therefore, defendants' Slagle, Van Voorn and Euler's motion to dismiss Count IV is denied.

B.  Section 1983 Claims against the Medical Organizations

Plaintiffs also bring a §1983 action against ACH and Corizon, collectively the Medical Organizations.  A successful §1983 claim against a private corporation must allege that that the private corporation acted under color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S. Ct.

2250, 2254, 101 L. Ed. 2d 40 (U.S. 1988).  Prisons have a constitutional duty to ensure that inmates receive medical treatment when needed. Crooks v. Nix, 872 F.2d 800, 804 (8th Cir. 1989). Plaintiffs in the instant action have alleged that ACH and Corizon maintained contracts with the state or the county to provide medical care to inmates. (Doc. #1-2, at ¶¶13, 17)  Therefore, the plaintiffs have sufficiently alleged that the Medical Organizations were acting under color of state law.

A §1983 action against a municipality or an entity acting under color of state law is not cognizable unless the plaintiff alleges that the unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[,]" or that such deprivations were undertaken in accordance with a "governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2035–36, 56 L. Ed. 2d 611 (1978).  Where a plaintiff basis his action on a governmental custom, the plaintiff must show:

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

Snider v. City of Cape Girardeau, 752 F.3d 1149, 1160 (8th Cir. 2014).

The Medical Organizations argue that plaintiffs have failed to allege sufficient facts to infer that they have "implemented a custom that lead to the alleged deprivation of their decedent's constitutional rights, and that this custom was the moving force that lead to the alleged injury." (Doc. #8, at 8; Doc. #13, at 3)

Plaintiffs assert that the complaint sufficiently alleges that the Medical Organizations either "failed to either have policies and procedures or to follow those policies and procedures or to supervise personnel sufficiently to ensure inmates' serious medical conditions are promptly and properly attended to . . ." (Doc. #22, at 9) Plaintiffs' complaint alleges that decedent was not provided his medications for five days. (Doc. #1-2, at ¶¶56, 57, 58, 61, 63) Decedent had informed jail personnel that he was experiencing abdominal pain and was referred to Medical. (Doc. #1-2, at ¶39) Jail personnel did not mark "Medical" as a Special Condition on the intake form, despite it being marked on the earlier intake form from his first incarceration less than a year earlier. (Doc. #1-2, at ¶40) According to plaintiffs, defendant Van Voorn failed to adequately review the records or to contact decedent's family or treating physician to discuss his care. (Doc. #1-2, at ¶48-49) Plaintiffs further allege that defendant Van Voorn has been disciplined by the Missouri State Board of Registration for the Healing Arts for violation of state controlled substances law. (Doc. 1-2, at ¶¶50-51) Plaintiffs also allege that other inmates have died at the Jail and the Correctional Center "because of the Defendants deliberate indifference in failing to provide adequate and/or timely medical treatment." (Doc. #1-2, at ¶90(e))

At this stage in the litigation, the above allegations are sufficient to state a plausible §1983 claim against the Medical Organizations. Plaintiffs have alleged a systemic failure within the Jail and Correctional Center to properly manage inmates with serious medical conditions. The systemic nature of the failure makes it plausible that Medical Organizations have some custom or policy or procedure, or lack thereof, that contributes to violations of the Eighth Amendment. See Foster v. Midwest Sec. Hous., LLC, No. 05-06116-CV-SJ-GAF, 2006 WL 89841, at *4 (W.D. Mo. Jan. 13, 2006) (finding that "Plaintiff[']s complaint is rife with facts which support the

inference that Plaintiffs' death resulted from the *complete lack of any policy* for ensuring that inmates' serious medical conditions are promptly attended to.") (emphasis in the original).

Therefore, defendants' motion to dismiss the §1983 claims against the Medical Organizations is denied.

V. CONCLUSION

Based on the foregoing, it is

ORDERED that the Motion to Dismiss by Defendants Corizon Health, LLC and Donna D. Euler, R.N. and Motion for Extension of Time to File Answer (doc. #7) is denied as to the motion to dismiss and granted as to the motion for an extension of time to file an answer. It is further,

ORDERED that Defendants Advanced Correctional Healthcare, Inc., Catherine M. Van Voorn, M.D. and Ann Marie Slagle, LPN's Motion to Dismiss Count IV of Plaintiffs' Petition (doc. #12) is denied. It is further,

ORDERED that Defendants Corizon Health, Inc. and Donna Euler, R.N.'s Motion to Dismiss Count III of Plaintiffs' Petition for Damages for Plaintiffs' Failure to File Health Care Affidavits (doc. #46) is granted and Count III of the Petition for Damages (doc. #1-2) is dismissed without prejudice. It is further,

ORDERED that Defendants Advanced Correctional Healthcare, Inc., Catherine M. Van Voorn, M.D. and Ann Marie Slagle, LPN's Motion for Dismiss State Tort Law Claims Based on Failure to File an Affidavit Pursuant to RSMO. Section 538.225 (doc. #47) is granted and Count II of the Petition for Damages (doc. #1-2) is dismissed without prejudice. It is further

ORDERED that Buchanan County Defendants' Motion to Dismiss Count I of Plaintiff's Petition for Damages for Failure to File Health Care Affidavits (doc. # 52) is granted and Count I of the Petition for Damages (doc. # 1-2) is dismissed without prejudice.

*/s/ Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE