# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| BRENDA DAVIS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 17-06058-CV-SJ-SWH |
| ) | |
| BUCHANAN COUNTY, MISSOURI, et ) | |
| al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Plaintiffs Brenda Davis and Frederick Stufflebean filed suit seeking damages against a number of entities and individuals as a result of the death of their son, Justin Stufflebean, who was incarcerated at the Buchanan County Jail and later at the Western Reception Diagnostic and Correctional Center. The case was removed to federal court from the Buchanan County Circuit Court. Five prior motions to dismiss have been decided by the Court, see doc. #60, and plaintiffs voluntarily dismissed without prejudice Corizon Health LLC and Donna Euler, see doc. #61. Presently pending before the Court is defendant Warden Ryan Crews' Motion for Judgment on the Pleadings and Suggestions in Support[1] (doc. #55). For the reasons discussed herein, this motion is granted without prejudice.

---

[1] On July 30, 2018, plaintiffs filed a Motion for Leave to File First-Amended Complaint to Add Parties and Re-Assert State Law Tort Claims (doc. #73). On August 24, 2018, this Court granted doc. #73 and ordered that plaintiffs electronically file the first-amended complaint within 10 days. (Doc. #75) The plaintiffs have not yet filed the first amended complaint. The Court has reviewed the proposed first-amended complaint (doc. #73-1). The proposed first-amended complaint does not change or add allegations against defendant Crews. Therefore, the Court will take up defendant Crews' motion for judgment on the pleadings.

I. LEGAL STANDARD

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is reviewed under the same standards as brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Haney v. Portfolio Recovery Assocs., L.L.C., 2016 WL 11265606, at *4 (8th Cir. Sept. 21, 2016). Rule 8 of the Federal Rules of Civil Procedure requires that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(1). The rule requires more than an "unadorned" complaint, but requires less than "detailed factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Thus, in order to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Courts ruling on a motion for judgment on the pleadings, must "construe the complaint in the light most favorable to the nonmoving party." Carton v. General Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir. 2010). The non-moving party is entitled to all reasonable inferences. Cent. Platte Nat. Res. Dist. v. U.S. Dep't of Agric., 643 F.3d 1142, 1148 (8th Cir. 2011). Nevertheless, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S.Ct. at 1950. Courts must read the complaint "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).

II. FACTS

As stated in the previous order (doc. #60), the following facts have been taken from plaintiffs' Petition for Damages (doc. #1-2). On December 15, 2014, the plaintiffs' son, Justin

Stufflebean (hereafter "decedent"), was charged with a crime and taken into custody and incarcerated at the Buchanan County Jail on December 23, 2014.

Decedent suffered from a number of medical ailments including: Addison's disease, hypocalcemia, myelopathy, neuropathy, anxiety, depression, abdominal pain, vitamin B12 deficiency, Gastro-esophageal reflux disease with esophagitis, indigestion, asthma and cholelithiasis.

On the day he was incarcerated, an employee of defendant Advanced Correctional Healthcare Inc. (hereafter "ACH", a private for-profit company contracted to provide medical care to inmates at the jail) performed a medical assessment on the decedent and submitted the assessment to defendant Dr. Van Voorn for her review and signature. ACH, including Dr. Van Voorn, had access to a medical intake screen performed by the Buchanan County Sheriff Department (hereafter "BCSD"), which was completed prior to the ACH assessment. Decedent informed jail personnel that he was on a lot of medications and had a calcium deficiency. The BCSD's screen was marked as Medical in the Special Condition section of the form. Decedent later posted bond.

On October 26, 2015, decedent received his sentence. At the sentencing hearing, decedent's long-time treating physician detailed decedent's disease process, his treatment regimen and the fragility of decedent's condition. The physician explained that Addison's disease is the failure of the adrenal glands to make cortisol which is necessary to sustain life. The disease also affects calcium levels in the body. The physician stated that the decedent had very low levels of calcium, which can be damaging to the body and life-threatening. The physician cautioned that decedent's calcium levels must be controlled, and that failure to have access to a hospital, or delayed access, can be deadly. Defendant Gross, a Deputy Officer with the BCSD, was in the

courtroom during the physician's statements. After the decedent was sentenced, defendant Gross took the decedent into custody. Defendant Gross did not inform jail personnel of the physician's testimony or decedent's medical condition.

Upon incarceration at the Buchanan County Jail, defendant Nauman completed a medical intake screen of decedent. Defendant Nauman inaccurately noted that decedent was not under a physician's care. The intake screen noted that decedent was on a number of medications, including: "pregnizon[2], Fultracordadone, Nathara, Calsatrio, Magnesium and PotassiumE." (Doc. #1-2, at ¶37) Decedent also complained of abdominal pain at the time. Defendant Nauman referred decedent to Medical, but did not mark "Medical" under Special Condition.

The same day decedent was sentenced and incarcerated at the Buchanan County Jail, decedent's mother (one of the plaintiffs), delivered decedent's medications to the Jail. Those medications included Natpara, melatonin, hydrocodone, ondansetron, fludrocortisone, paroxetine, calcitriol, prednisone and Vitamin D. Decedent's mother also provided specialized injection tips for the Natpara. A week prior to his incarceration decedent was seen for acute abdominal pain and was prescribed ondansetron for nausea and vomiting. The calcitriol was used to maintain decedent's calcium levels within normal range.

On October 27, 2015, the day after he was incarcerated, decedent asked that his medications be brought to him and told employees that he had Addison's and hypoparathryoid disease. Defendant Slagle, a nurse employed by ACH, requested a verbal order from defendant Dr. Van Voorn for the following medications: "Natpara 50 mcg daily sc with notation that 'patient must supply' medication; Vit D Ergo 500001 cap po daily, Ondansetron Zofran 4 mg dissolve one

---

[2] The spelling and capitalization of the medications above are written as they appear in the petition. (Doc. #1-2, at ¶37)

tab by mouth every 6 hours; Paxil 10 mg 1 tab po daily; Prednisone 10 mg 1 tab po daily; Fludrocortisone 0.1 mg 2 tab po daily." (Doc. #1-2, at ¶46) Defendant Dr. Van Voorn denied the ondansetron. She also failed to order calcitrol to maintain decedent's calcium levels. Decedent did not receive his medications on October 27, 28, or 29, 2015.

On October 29, 2015, decedent was transferred to the Western Reception Diagnostic and Correctional Center (hereafter "the Correctional Center") where defendant Crews was the Warden. Decedent was found fit for confinement. Decedent did not receive his prescribed medications on October 30 or 31, 2015. On October 31, 2015, decedent was taken by ambulance to Mosaic Life Care Medical Center (hereafter "Mosaic"). Upon arrival at Mosaic, decedent was unresponsive and in cardiac and respiratory arrest with cardiopulmonary resuscitation in process. A nurse from the Correctional Center informed Mosaic that the morning of October 31, 2015, decedent "was dizzy but he wanted to stay in his cell . . . . Then they brought him to him [sic] and he was kind of dizzy and he was talking and suddenly he became unresponsive." (Doc. #1-2, at ¶64)

On November 4, 2015, decedent's mother (the plaintiff) retrieved decedent's prescriptions from the Buchanan County Jail and discovered he had not been given his prescribed medications while at the Buchanan County Jail. On November 16, 2015, decedent was pronounced dead.

### III.　DISCUSSION

The Court interprets the Petition for Damages as seeking relief from Warden Crews, in his official and individuals capacities[3], for wrongful death (Count I) and for constitutional violations

---

[3] See paragraph 16e of the Petition: "Defendant Crews is sued in his individual and official capacity."

pursuant to 42 U.S.C. § 1983 (Count IV). In the General Allegation section of the Petition for Damages, the allegations against Warden Crews include the following:

> 16. Defendant Warden Ryan Crews of The Missouri Department of Corrections (hereinafter "Defendant Crews") who was at all relevant times hereinafter mentioned the Warden of Western Reception and Diagnostic Correctional Center (WRDCC) in Buchanan County, Missouri.
>
>    a. Warden Crews was responsible for the management of Western Reception Diagnostic and Correctional Center located in Saint Joseph, Missouri.
>
>    b. Defendant Crews had a statutory duty under Missouri law to attend to the medical needs of inmates housed at WRDCC.
>
>    c. Defendant Crews at all relevant times possessed policy making authority for WRDCC, and it was those policies, lack of policies, training and personnel management decisions that resulted in a violation of Justin Stufflebean's Constitutional Rights and resulted in a deliberate indifference to his serious medical condition.
>
>    d. Defendant Crews' conduct in this case was under the color of law.

(Doc. #1-2, at ¶16)

The General Allegation section of the Petition, paragraphs 6 through 18, is followed by a section containing Specific Allegations, paragraphs 19 through 73. The factual recitation set forth in section II of this Order is taken directly from paragraphs 19 through 73 of the Petition. However, none of the factual details recited in section II of this Order specifically mention Warden Crews. Further, only paragraphs 59 through 64 of the Petition could possibly pertain to Warden Crews as paragraphs 19 through 57 all deal with actions taken prior to the time Justin Stufflebean was transported to the Correctional Center where defendant Crews was the Warden. The specific allegations pertaining to the decedent's treatment once he was transferred to the Correctional Center are set forth as follows:

> 59. On October 29, 2015 Justin Stufflebean was transferred to the Western Reception Diagnostic and Correctional Center in Saint Joseph, Buchanan County, Missouri.

6

60. On October 29, 2015 defendant Corizon found Justin Stufflebean "fit for confinement."

61. On October 30, 2015 Justin Stufflebean did not receive his prescribed medications.

62. On October 30, 2015 at 6:10 p.m. personnel from Buchanan County Jail contacted Brenda Davis to pick up "all property" belonging to Justin Stufflebean.

63. On October 31, Justin Stufflebean did not receive his prescribed medications.

64. On October 31, 2015 Mosaic Life Case noted their history from Defendant Euler, notating the following, "[t]his morning, the patient was dizzy but he wanted to stay in his cell, according to Donna Euler, nurse at the correctional facility. Then they brought him to him and he was kind of dizzy and he was talking and suddenly, he became unresponsive." *sic*.

65. On October 31, 2015 at 14:52 hours Justin Stufflebean arrived by ambulance at Mosaic Life Care Medical Center in Saint Joseph, Buchanan County, Missouri.

66. Justin Stufflebean arrived unresponsive, in cardiac and respiratory arrest with cardiopulmonary resuscitation in process.

(Doc. #1-2, at ¶¶59-66)

A. Official Capacity Claims

Warden Crews was sued in his official capacity and individual capacity. (Doc. #1-2, at ¶16e) In his motion for judgment on the pleadings, Warden Crews argues that any suit against him in his official capacity is barred by the Eleventh Amendment. (Doc. #55, at 4-5, 7-8) Plaintiffs concede that any claims for monetary damages against Warden Crews in his official capacity are barred by the Eleventh Amendment. (Doc. #71, at 6, 8) Therefore, this Court will dismiss Counts I and IV against Warden Crews in his official capacity.

B. Individual Capacity Claims

1. Wrongful Death Claim (Count I)

Count I of plaintiffs' complaint is a wrongful death action against Warden Crews, Buchanan County and several Buchanan County employees. Warden Crews argues that any claims against him in Count I are barred by the official immunity doctrine and the public duty doctrine. (Doc. #55, at 8) With regard to both the official immunity doctrine and the public duty doctrine, plaintiffs argue that "the inquiry is extremely fact specific and not appropriate for Judgment on the Pleadings. Without discovery we cannot fairly fathom the mandatory aspects of Warden Crews' responsibilities." (Doc. #71, at 9) Plaintiffs do not provide any analysis or cite to any case law to support their proposition.

Count I alleges that:

Warden Ryan Crews breached [his] duty of care and committed the following acts of negligence and carelessness:

   a. In failing to communicate, supervise, provide necessities, implement appropriate policies and procedures and failure to follow existing policies and procedures.

   b. In failing to assess Justin Stufflebean's current and continuing medical status while detained;

   c. In failing to assess Justin Stufflebean's chronic health conditions and appreciating their risk to his health and life;

   d. In failing to plan appropriately in order to meet all health needs of Justin Stufflebean;

   e. In failing to evaluate the care or lack of care provided to Justin Stufflebean in order to make appropriate changes; and

   f. In failing to develop and implement a classification system that safeguarded Justin Stufflebean's medical conditions.

(Doc. #1-2, at ¶75) The allegations above also applied to Buchanan County and the Buchanan County defendants.

The official immunity doctrine operates to shield public officials from their negligent acts, when those acts are committed in the course of their official duties and such acts are discretionary in nature. Southers v. City of Farmington, 263 S.W.3d 603, 610 (Mo. 2008). The distinction between ministerial and discretionary "depends on the 'degree of reason and judgment required' to perform the act." Davis v. Lambert-St. Louis Int'l Airport, 193 S.W.3d 760, 763 (Mo. 2006) (quoting Kanagawa v. State By and Through Freeman, 685 S.W.2d 831, 836 (Mo. banc 1985)). There are no allegations that Warden Crews was directly involved with the decedent's medical care. Instead, his involvement stems from his position as warden of the Correctional Center and his supervisory responsibilities. As such any negligence on his part is barred by the official immunity doctrine. See Nguyen v. Grain Valley R-5 Sch. Dist., 353 S.W.3d 725, 733 (Mo. Ct. App. 2011) (finding that "supervisory conduct and policy making is discretionary and covered by the official immunity [doctrine]"); Vogel v. Turner, 2013 WL 358874, at *9 (D. Minn. Jan. 8, 2013), report and recommendation adopted, 2013 WL 359072 (D. Minn. Jan. 30, 2013) (noting that the defendants "were engaged in higher-level decisionmaking in which they were required to exercise their discretion in setting medical care policies.")

Under the public duty doctrine, "a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual." Southers, 263 S.W.3d at 611. The doctrine focuses on the duty owed; thus, where the duty is owed to the public and not to a particular individual, the plaintiff cannot plead a claim for relief. Rodgers v. City of N. Kansas City, 340 S.W.3d 154, 159 (Mo. Ct. App. 2011). A duty is owed to a particular individual when "the law imposes on the officer the performance of ministerial duties in which a private individual has a special, direct, and distinctive interest . . . ." State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 445 (Mo. banc 1986).

As stated, supra, there are no allegations that Warden Crews was directly involved with the care of the decedent. Instead the allegations stem from his role as Warden of the Correctional Center. Warden Crews' duty to ensure proper training, policies and/or safety measures are in place are duties owed to the public, not an individual. See State ex rel. Barthelette v. Sanders, 756 S.W.2d 536, 538 (Mo. 1988) (finding that a state park superintendent's "duty regarding safety measures was owed to the public at large rather than to the decedent in particular . . . ."); State ex rel. Howenstine v. Roper, 155 S.W.3d 747, 755 (Mo. 2005) (medical director's "acts to improve the operations, treatment and training at the clinic were for the public at large and not specifically for [the individual patient]."), abrogated on other grounds by Southers, 263 S.W.3d 603 (Mo. 2008); cf. Berger v. City of Univ. City, 676 S.W.2d 39, 42 (Mo. Ct. App. 1984) (finding that claims against a fire chief survived a motion to dismiss because "the count against him further charges that [the fire chief] actively interfered with the efforts of the neighboring firemen to fight the fire[,]" and therefore, the fire chief was directly involved in the matter and was not acting purely in a supervisory role). Hence, in addition to being barred by the official immunity doctrine, plaintiffs' wrongful death claim against Warden Crews is also barred by the public duty doctrine.

2. Section 1983 Claim (Count IV)

Count IV of the Petition is brought under 42 U.S.C. § 1983 against all defendants. After incorporating by reference paragraphs 1-88 of the Petition, plaintiffs allege that the defendants':

> actions and omissions described above were made under color of state law and caused a deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States (including, without limitation, the Eighth Amendment of the United States Constitution). Accordingly, Defendants' actions/inactions described above constitute violations of 42 U.S.C. §1983.
>
> a. Justin Stufflebean had a serious medical condition in need of timely and consistent treatment;

  b. Defendant's [sic] were aware of Justin Stufflebean's serious medical needs and aware of the need for treatment so as that a layperson would be able to recognize the necessity of the same;

  c. Defendants acting with deliberate indifference, failed to provide adequate treatment of Justin Stufflebean's acute and chronic health conditions within a reasonable period of time;

  d. As a direct result of Defendant's [sic] acts and omissions, Justin Stufflebean and Plaintiffs were injured and suffered damages.

  e. Upon information and belief, other inmates have died at Buchanan County Jail and Western Reception Diagnostic Correctional Center because of Defendants deliberate indifference in failing to provide adequate and/or timely medical treatment.

  f. Defendants' actions and omissions were malicious intentional and/or recklessly indifferent to the rights of Justin Stufflebean under the law such that punitive damages are warranted.

  g. Defendants' acts and omissions were willful, wanton, reckless, malicious and sadistic and further show a complete and deliberate indifference to, and conscious disregard for, the safety and rights of Justin Stufflebean. Therefore, Plaintiffs are entitled to awards of punitive damages.

  h. 42 U.S.C. §1983 authorizes the payment of attorney's fees and expenses to Plaintiff's [sic] counsel, and Plaintiffs seek said relief.

(Doc. #1-2, at ¶90)

  Warden Crews argues that plaintiffs have failed to state a claim against him in his official capacity.[4] Plaintiffs' claims against Warden Crews allege that the warden was responsible for the management of the Correctional Center and that the policies and training, or lack thereof, resulted in a deliberate indifference to the serious medical condition of the decedent. (Doc. #1-2, at ¶¶16, 90) The Eighth Amendment's prohibition on cruel and unusual punishment may be violated where there is insufficient or no medical care rendered to an inmate. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). A plaintiff making a claim against a warden who has

---

[4] Warden Crews has not argued that he is entitled to qualified immunity.

no direct involvement in the alleged unconstitutional violation must allege that a policy or deliberate indifference lead to the unconstitutional violation. Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987). Where plaintiffs claim a deliberate indifference to a serious medical condition, "courts have stated supervisory officials are liable under § 1983 only if they fail promptly to provide an inmate with needed medical care, they deliberately interfere with the prison doctors' performance, or they tacitly authorize or are indifferent to the prison doctors' constitutional violations." Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002). A single incident is insufficient to establish a policy. Ouzts, 825 F.2d at 1278.

The allegations against Warden Crews are minimal. In their Petition, plaintiffs provide a brief description of Warden Crews' role at the Correctional Center. (Doc. #1-2, at ¶17) The allegations contained in Count IV mention Warden Crews but are not specific to Warden Crews as the allegations are against all the named defendants. (Doc. #102, at ¶90) The only mention of other incidents is a reference to other deaths at both the Buchanan County Jail and the Correctional Center. (Doc. #1-2, at ¶90e)

As recognized in Meloy, an allegation of deliberate indifference to an inmate's serious medical needs against a warden, solely on the basis of his supervisory role, must allege that the warden "'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye [to it].'" Meloy, 302 F.3d at 849 (citing Boyd v. Knox, 47 F.3d 966, 968 (8th Cir.1995)). The claim in the instant matters does not rise to that level. Unlike the facts in Foster v. Midwest Sec. Hous., LLC, 2006 WL 89841, at *4 (W.D. Mo. Jan. 13, 2006), there are no allegations that staff at the Correctional Center were aware or observed issues with decedent's health. Foster v. Midwest Sec. Hous., LLC, 2006 WL 89841, at *4 (W.D. Mo. Jan. 13, 2006) (finding that employees of a privately owned detention facility providing services to various counties "merely stood by for five

days and watched as Plaintiff repeatedly vomited, complained of acute abdominal pain, deteriorated to the point of having yellow skin and a severely swollen abdomen, and ultimately died."). The Court concludes that plaintiffs have failed to allege the minimal level of conduct that would allow for an action to proceed under 42 U.S.C. § 1983 against a supervisory official either on the basis of an official policy or based on the supervisor's direct involvement in the failure to provide adequate medical care. Accordingly, Count IV of plaintiffs' Petition for Damages will be dismissed as to Warden Crews.

## IV. CONCLUSION

For the reasons stated above, plaintiffs have failed to state a claim against Warden Crews for either the wrongful death action (Count I) or the section 1983 action (Count IV). Therefore, Warden Crews' motion for judgment on the pleadings is granted.

Warden Crews requests that this matter be dismissed with prejudice and that costs be assessed. This Court does not believe that dismissal with prejudice is warranted. Warden Crews' motion for judgment on the pleadings is essentially a motion to dismiss for failure to state a claim. As such, plaintiffs should not be foreclosed from asserting a claim for which there is a sufficient factual basis. See Trevino v. Union Pac. R. Co., 916 F.2d 1230, 1239 (7th Cir. 1990) (finding that "a plaintiff challenging dismissal of his complaint (or indeed his suit) for failure to state a claim is free to show, with reference to facts as yet hypothetical, that he may be able to establish a set of facts, consistent with though not necessarily enumerated in his complaint, that would entitle him to a judgment."); Lopez v. Regents of Univ. of California, 5 F. Supp. 3d 1106, 1113 (N.D. Cal. 2013) (finding that "leave to amend should be freely given if it is possible that further factual allegations will cure any defect."). Furthermore, under the current scheduling order, any motion to amend the pleadings is due by October 1, 2018, and discovery shall close on January 31, 2019.

13

(Doc. #70) Trial in this matter is not set until September 9, 2019. (Doc. #70) Therefore, the parties have ample time to prepare for trial. At this stage of the proceeding, the Court also denies Warden Crews' motion for costs.

Based on the foregoing, it is

ORDERED that Defendant Warden Ryan Crews' Motion for Judgment on the Pleadings and Suggestions in Support (doc. #55) is granted in that Counts I and IV against Warden Ryan Crews are dismissed without prejudice, it is further

ORDERED that Warden Ryan Crews' request for costs is denied.

                                          */s/ Sarah W. Hays*
                                          SARAH W. HAYS
                                      UNITED STATES MAGISTRATE JUDGE