# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| BRENDA DAVIS, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Case No. 5:17-cv-06058-NKL |
| BUCHANAN COUNTY MISSOURI, *et al.*, | ) ) ) ) |
| Defendants. | ) ) ) |

## ORDER

Defendants Buchanan County, Missouri, former Buchanan County Sheriff Mike Strong, Captain Jody Hovey, and Sheriff's Deputies Brian Gross and Dustin Nauman (the "Buchanan County Defendants") move for summary judgment on Count I of the second amended complaint, which alleges wrongful death under Missouri law on the grounds of sovereign immunity, Missouri's official immunity doctrine, and the public duty doctrine for a wrongful death claim. Doc. 351. For the following reasons, the motion is granted as to the wrongful-death claims against Sheriff Strong and Captain Hovey, but otherwise denied.

## I.   Factual Background

Count I of the second amended complaint alleges that the Buchanan County Defendants failed to provide Justin Stufflebean appropriate medical care during his three-day incarceration at the Buchanan County Jail. Stufflebean, who suffered from two endocrine disorders, was not given his prescription medications for several days at the jail and the Missouri Department of Corrections prison to which he subsequently was transferred. Within days of his incarceration, Stufflebean died.

### a. Sheriff's Deputy Gross

Brian Gross is a Buchanan County Sheriff's Deputy. At all relevant times, he was assigned to courtroom security at the Buchanan County Courthouse. His duties included maintaining order in the courtroom and transferring those sentenced from the courthouse to the jail. BC SF,[1] ¶ 6; BC SF Reply,[2] ¶ 6. Strong, the Buchanan County Sheriff at the time, testified that the transporting officer was expected to advise the booking officer of any medical conditions of which the transporting officer was aware, and therefore, "there was an expectation that the transporting officer would be paying attention" to courtroom proceedings. Doc. 447-1 (Deposition of Sheriff Jerry Michael Strong), 55:11-15 (Q. . . . [T]he question is here, there was an expectation that the transporting officer would be paying attention, fair? A. Correct.); BC AF,[3] ¶ 6 (noting that, as transporting officer, Gross was responsible for answering the booking officer's standard question on the Medical Intake Screening Questionnaire of whether "the arresting or transporting officer believe[s] the inmate is a medical, mental health, or suicide risk now"). The Buchanan County Sheriff's Department policies state that, "[w]hen a detainee requiring special needs care is identified, the facts surrounding the case shall be relayed to the jail commander (or designee) and the medical staff . . . ." BC AF, ¶ 53.

Gross was on duty in the courtroom during Stufflebean's sentencing hearing on October

---

[1] "BC SF" refers to Plaintiff's Response to the Buchanan County Defendants' Statement of Uncontroverted Facts in Doc. 447 (Suggestions in Opposition to Buchanan County Defendants' Motion for Summary Judgment).

[2] "BC SF Reply" refers to Defendants' Reply to Plaintiffs' Response to Defendants' Statement of Facts in Doc. 564 (Reply Suggestions in Support of Buchanan County Defendants' Motion for Summary Judgment).

[3] "BC AF" refers to Defendants' Response to Plaintiffs' Statement of Additional Material Facts in Doc. 564.

26, 2015.  He was sitting approximately 30 feet from the witness chair when Stufflebean's long-time treating physician, Dr. Brewer, discussed Stufflebean's uniquely fragile condition.  Doc. 447-3 (Moden Affidavit), ¶ 5.  Gross admits that he normally can hear testimony in the courtroom.  BC SF, ¶¶ 8, 10.  Gross also acknowledged that it is "rare" for doctors to testify at sentencing hearings.  Doc. 447-4 (Deposition of Brian M. Gross), 10:14-16.  Dr. Brewer's testimony was made all the more unusual by the fact that he claimed he had canceled a trip "so [he] could be [t]here for Justin and to say what – to help clarify his medical condition."  Doc. 477-18, 12:4-7.

Dr. Brewer explained that Stufflebean's extraordinarily low calcium-levels could become "life-threatening," that an Addison's flare-up could manifest as "[f]atigue, malaise that's followed by severe nausea, vomiting, dehydration" and that, "if not intervened upon in the hospital, in a hospital setting, it can be death within 24 to 48 hours."  *Id.*, ¶¶ 3-4; Doc. 447-18, 8:2-10:9.  The doctor emphasized that "to someone with Addison's who is as brittle as he is and with his electrolyte disturbances, not being able to have access to the hospital would be—or delayed access could—it kills people."  *Id.*, 10:20-25.  Dr. Brewer testified that Stufflebean had been hospitalized 16 times in the prior year, not counting all of the out-patient emergency room visits that didn't involve in-patient care, and indeed, Stufflebean had been hospitalized just the prior week.  *Id.*, 9:23-10:9.

After Stufflebean was sentenced, Gross took him into custody and transported him to the jail.  Despite Stufflebean's doctor's detailed and unusual testimony that Stufflebean's medical conditions would endanger his life if they were not properly controlled, Gross provided no information about Stufflebean's medical condition to the booking officer.  BC SF, ¶ 19.

### b. Sheriff's Deputy Nauman

Nauman is and at all relevant times was a Buchanan County Sheriff's Deputy assigned to the booking desk at the Buchanan County Jail. Nauman's job per Buchanan County's medical policies and procedures was to review and be familiar with those policies and procedures requiring him to conduct the "BCSD Medical Intake Screening" carefully, with an eye towards identifying prisoners with chronic conditions or special needs so that their needs would be addressed properly throughout their incarceration. BC AF, ¶ 17. This required Nauman to be attentive to the questioning and the answers. *Id.* Strong, who was Sheriff at the time, testified that he expected that the medical history for a prisoner like Stufflebean would be obtained "[a]t the booking process." *Id.*, ¶ 92.

The first question on the jail's Medical Intake Screening form is, "Was inmate a medical, mental health or suicide risk during any prior contact or confinement within the department?" *Id.*, ¶ 10. Nauman stated that he was not certain if Stufflebean's prior Medical Intake Screening form, from 2014, was available to him. *Id.*, ¶ 16. Stufflebean's prior booking records showed that he had been classified as "Special Condition – Medical," and that Stufflebean needed medical attention due to his calcium deficiency." *Id.*, ¶ 18.

The second question on the form is: "Does the arresting or transporting officer believe that the inmate is a medical, mental health or suicide risk now?" *Id.*, ¶ 11. However, Gross did not report Stufflebean's medical conditions to Nauman.

The information that Nauman entered in the medical questionnaire when he booked Stufflebean into the Buchanan County Jail on October 26, 2015 indicates that Stufflebean reported abdominal pain, unexplained weight loss, loss of appetite, night sweats, and fatigue,[4] and that he

---

[4] Defendants claim that these complaints were historical, rather than reports of conditions Stufflebean was experiencing at the time of the booking. Defendants cite a portion of the medical

was taking several prescribed medications, including prednisone, fludrocortisone, NATPARA, Calcitriol, magnesium, E, and potassium. *Id.*, ¶ 27. Although the Medical Intake Screening Form asks for the "dosage, and frequency" of medications, Nauman did not document that information. BC AF, ¶ 12.

Despite the facts that Stufflebean had been hospitalized just the prior week (in addition to fifteen other in-patient hospitalizations), and his longtime treating physician had testified at his sentencing hearing that same day, the medical intake screening questionnaire indicates that Stufflebean was not under the care of a physician. *Id.*, ¶ 8. Nauman also recorded that Stufflebean did not "currently" need medical attention. BC SF, ¶ 23. In contrast, Stufflebean's medical intake screening questionnaire from his prior booking, in December 2014, stated that Stufflebean was in need of medical attention "BECAUSE OF A CALCIUM DEFICIENCY." Doc. 447-9. Had Nauman recorded that Stufflebean currently needed medical attention, Stufflebean would have been classified as "Special Condition—Medical," as he was the first time he was booked into the jail, and both the medical staff and jail commander would have been notified of his condition. BC SF, ¶ 24; Doc. 631 (transcript of November 18, 2019 teleconference), 7:2-8:19.

After completing the medical questionnaire for Stufflebean upon booking him into the jail, Nauman printed a copy of the completed questionnaire and placed it in the nurse's box, and then

---

intake screening questionnaire titled "Questionnaire: Ebola" to support their claim. Stufflebean's form indicates that he denied having "abdominal (stomach) pain." The fact that Stufflebean apparently denied having abdominal pain on an Ebola questionnaire that begins with questions concerning travel to and contact with people from West Africa at best raises a disputed issue as to whether Stufflebean's symptoms of abdominal pain reported to Nauman were supposed to be historical rather than a description of his condition at that time. The intake form, which appears to be describing Stufflebean's present general medical condition rather than his exposure to Ebola, already lists abdominal pain among other symptoms. Construing the facts in the light most favorable to Plaintiffs, the Court finds for the purpose of this motion that Stufflebean reported to Nauman conditions he was experiencing at that time.

5

contacted a nurse by telephone to advise her that he had booked an inmate who needed to be seen for medical issues. BC AF, ¶ 28. Stufflebean was placed in a separate cell from other inmates being booked into the jail, but Nauman could not recall the reason for it. Doc. 447-8 (Deposition of Dustin R. Nauman), 20:3-11.

When Nauman's shift ended at 5 p.m., Stufflebean still was in a holding cell. BC SF, ¶ 29. Nauman could not recall following up with the nurse as to Stufflebean's care. BC AF, ¶ 95. Nauman did not know whether, or when, a nurse came to check on Stufflebean. BC SF, ¶ 30. Stufflebean was in the holding cell in the booking area for 12 hours and was never seen by a nurse while in the holding cell. BC AF, ¶ 96.

Nauman had no further contact with Stufflebean during his stay in the Buchanan County Jail in October 2015. BC SF, ¶ 31.

    **c. Captain Hovey and Sheriff Strong**

Hovey was the administrator of the jail and supervisor of jail staff, including Gross and Nauman as well as the third-party contractor that provided medical services to those in the custody of the Buchanan County Jail.

Sheriff Strong was responsible for the management of the Buchanan County Jail, including employees Gross, Nauman, and Hovey, as well as the third party that contracted to provide medical services to those in the custody of the Buchanan County Jail. Strong possessed final authority over Buchanan County's policies, including the policies that Plaintiffs allege caused Stufflebean's death.

Neither Hovey nor Strong was directly involved in Stufflebean's transportation, booking, or medical care.

## II. Discussion

### a. Sovereign Immunity

For the reasons set forth in the Court's order on the Buchanan County Defendants' motion to dismiss the second amended complaint, Doc. 665, the Court rejects the Buchanan County Defendants' argument that sovereign immunity bars Plaintiffs' claims.

### b. Official Immunity

The Buchanan County Defendants also argue that Missouri's official immunity doctrine bars Plaintiffs' claims against them. The official immunity doctrine shields negligent acts that a public official performs in the course of his official duties so long as the duties are discretionary, rather than ministerial, in nature. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008), *as modified on denial of reh'g* (Sept. 30, 2008). The distinction between ministerial and discretionary acts "depends on the 'degree of reason and judgment required' to perform the act." *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. 2006) (citation omitted); Doc. 142, p. 5.

> The determination of whether an act is discretionary or ministerial is made on a case-by-case basis, considering: (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity.

*Southers*, 263 S.W.3d at 610. "[T]he party asserting the affirmative defense of official immunity . . . [bears] the burden of pleading and proving that they are entitled to that defense." *Nguyen v. Grain Valley R-5 Sch. Dist.*, 353 S.W.3d 725, 730 (Mo. Ct. App. 2011).

Sheriff Strong and Captain Hovey perform supervisory and administrative roles. Plaintiffs have not suggested that either Sheriff Strong or Captain Hovey was directly involved in Stufflebean's medical care. Plaintiffs seek to hold them responsible only insofar as they failed in their duties of training, oversight and policymaking. However, "[t]his type of supervisory conduct

and policy making is discretionary and covered by official immunity." *Nguyen*, 353 S.W.3d at 733 (finding that allegations relating to "hiring policies, training of employees, and general supervision of employees" is "discretionary"); *see also* Doc. 76 (Order on Warden Crews' Motion for Judgment on the Pleadings), p. 9 ("There are no allegations that Warden Crews was directly involved with the decedent's medical care. Instead, his involvement stems from his position as warden of the Correctional Center and his supervisory responsibilities. As such any negligence on his part is barred by the official immunity doctrine."). Thus, the doctrine of official immunity bars the wrongful death claims against Strong and Hovey.

As for Deputies Gross and Nauman, on the other hand, construing the evidence in the light most favorable to the plaintiffs, their conduct was ministerial. Each was obligated to convey or record medical needs. *See, e.g.,* BC AF, ¶ 53 (noting that the Buchanan County Sheriff's Department policies state that, "[w]hen a detainee requiring special needs care is identified, the facts surrounding the case shall be relayed to the jail commander (or designee) and the medical staff"). The Eighth Circuit has held that observing and reporting an inmate's condition within the scope of one's duty is not discretionary. *See Letterman v. Does*, 859 F.3d 1120, 1126 (8th Cir. 2017) ("The duty to report a medical emergency when one of the[] [relevant] criteria is met is mandatory and does not depend on the officer's assessment of whether a medical emergency actually exists."). Gross has acknowledged that he is supposed to report "special medical conditions" if he is aware of them. Doc. 564, p. 74 ("[B]oth Gross and Sheriff Strong testified that, . . . deputies at sentencing hearings are supposed to report special medical conditions when they bring a prisoner over from court, if they have such information, . . . ."). Sheriff Strong stated that Gross was obligated to pay attention to and convey information concerning medical conditions. *See, e.g., id.* Thus, there was no exercise of discretion involved in Gross's failure to

convey information concerning the severity of Stufflebean's medical conditions to Deputy Nauman.

Similarly, Deputy Nauman's task, of accurately recording information provided by the inmate or the transporting officer, and communicating special medical conditions to medical staff, also was ministerial.

The conduct by each of the deputies falls "neatly into the category of actions 'which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed.'" *Letterman*, 859 F.3d at 1126-27 (quoting *Southers*, 263 S.W.3d at 610). Such tasks confer no policymaking authority and require no professional judgment. *Letterman*, 859 F.3d at 1126. If the deputy hears of a special medical condition, the deputy simply is obligated to report and/or record it.

Finally, imposing liability on Nauman and Gross would not have the effect of making officers inappropriately cautious. To the contrary, it would merely encourage officials to conduct their ministerial duties with due care.

### c. The Public Duty Doctrine

Under the public duty doctrine, "a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual." *Southers*, 263 S.W.3d at 611. The public duty doctrine does not insulate a public employee from liability "for breach of ministerial duties in which an injured party had a 'special, direct, and distinctive interest.'" *Id.*, 611-12 (citation omitted). "[W]hen injury to a particular, identifiable individual is reasonably foreseeable as a result of a public employee's breach of duty," the public duty doctrine does not apply. *Id.* at 612.

9

The duties at issue here—Gross's and Nauman's duties to accurately report and/or record important information pertaining to Stufflebean's serious medical needs—were, as discussed above, ministerial duties, and moreover, they were duties in which Stufflebean had a "special, direct, and distinctive interest." Therefore, the public duty doctrine does not immunize Gross or Nauman against Plaintiffs' wrongful death claims. *See, e.g., Tanner v. City of Sullivan*, No. 11-CV-1361 NAB, 2013 WL 121536, at *14 (E.D. Mo. Jan. 9, 2013) (denying immunity under public duty doctrine where plaintiffs "introduced sufficient evidence that a reasonable jury might find that the risk of suicide by Palmer was reasonably foreseeable as a result of the Defendants' failure to follow the policies regarding thorough and systematic searches and the removal of ligatures considering Palmer's demeanor at the time of arrest and admonitions to watch her and provide her with her medicine").

## III. Conclusion

For the reasons discussed above, the Buchanan County Defendants' motion for summary judgment on the wrongful death claims, Doc. 350, is granted in part and denied in part. The motion by Defendants Strong and Hovey for summary judgment on Count I is GRANTED. The Buchanan County Defendants' motion for summary judgment on Count I otherwise is DENIED.

                                                s/ Nanette K. Laughrey
                                                NANETTE K. LAUGHREY
                                                United States District Judge

Dated: March 30, 2020
Jefferson City, Missouri